﻿Citation Nr: 18107538
Decision Date: 06/04/18 Archive Date: 06/02/18

DOCKET NO. 14-21 116A
DATE: June 4, 2018
ORDER
Entitlement to a total disability rating based on individual unemployability (TDIU) from March 1, 2011, is granted, subject to the laws and regulations governing the payment of monetary benefits.
REMANDED
Entitlement to a rating in excess of 30 percent for left total knee replacement is remanded.
Entitlement to increased ratings for lumbosacral strain, rated as 10 percent disabling prior to October 9, 2012; 40 percent disabling from October 9, 2012, to April 24, 2014; and 20 percent disabling from April 25, 2014; is remanded.
Entitlement to a rating in excess of 30 percent for total right knee replacement is remanded.
Entitlement to TDIU prior to March 1, 2011, is remanded.
Entitlement to an effective date earlier than April 30, 2012, for an adjustment disorder with depressed mood is remanded.
FINDINGS OF FACT
1. From March 1, 2011, to April 29, 2012, the Veteran was service-connected for the following disabilities: bilateral total knee replacement and lumbosacral strain.
2. From March 1, 2011, to April 29, 2012, these service-connected disabilities were rated as 60 percent disabling combined with the disorders being of the same etiology and same body system.
3. The evidence is in equipoise as to whether the Veteran’s service-connected bilateral total knee replacement and lumbosacral strain rendered him unemployable from performing all forms of substantially gainful employment that are consistent with his education and occupational experience from March 1, 2011, to April 29, 2012.
4. Since April 30, 2012, the Veteran has been service-connected for bilateral total knee replacement, lumbosacral strain, and an adjustment disorder with depressed mood.
5. Since April 30, 2012, these service-connected disabilities have been rated 70 and 80 percent disabling combined with the orthopedic disabilities being 60 percent disabling and all disabilities being of a common etiology.
6. The evidence is in equipoise as to whether the Veteran’s service-connected bilateral total knee replacement, lumbosacral strain, and adjustment disorder have rendered him unemployable from performing all forms of substantially gainful employment that are consistent with his education and occupational experience since April 30, 2012.
CONCLUSION OF LAW
Resolving reasonable doubt in the Veteran’s favor, the criteria for TDIU from March 1, 2011 have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16, 4.19 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSION
The Veteran served on active duty from August 1974 to August 1977.
This matter comes to the Board of Veterans’ Appeals (Board) on appeal from a December 2011 (increased ratings and TDIU) and May 2014 (grant of service connection for a psychiatric disorder) rating decisions of a Department of Veterans Affairs (VA) Regional Office (RO).
The Veteran filed his claim for TDIU on February 11, 2011. Pursuant to Hart v. Mansfield, 21 Vet. App. 505 (2007), the Board must consider the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Moreover, the Board notes that the right total knee replacement was rated 100 percent from January 4, 2010, to February 28, 2011. Receipt of a 100 percent disability rating for a service-connected disability does not necessarily render moot the issue of entitlement to a TDIU. Bradley v. Peake, 22 Vet. App. 280 (2008). The Board is granting TDIU effective March 1, 2010, and remanding entitlement to TDIU prior to March 1, 2010.
1. Entitlement to a total disability rating based on individual unemployability (TDIU) from March 1, 2011
Governing Law and Regulations
Total disability ratings for compensation based on individual unemployability may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation without regard to advancing age as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a).
For the above purpose, disabilities resulting from a common etiology or a single accident will be considered a single disability. 38 C.F.R. § 4.16(a).
Substantially gainful employment suggests a living wage. The ability to work sporadically or obtain marginal employment is not substantially gainful employment. Moore v. Derwinski, 1 Vet. App. 356, 358-59 (1991). 
For a veteran to prevail on a claim for a total compensation rating based on individual unemployability, the record must reflect some factor, which takes this case outside the norm. The simple fact that a claimant is currently unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether a veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993) (A high rating is recognition that the impairment makes it difficult to obtain or keep employment.).
Age cannot be considered as a factor in evaluating a service-connected disability. Unemployability associated with advancing age or intercurrent disability cannot be used as a basis for a total disability rating. 38 C.F.R. § 4.19.
Analysis
From March 1, 2011, to April 29, 2012, the Veteran was service-connected for the following disabilities: bilateral total knee replacement and lumbosacral strain. From March 1, 2011, to April 29, 2012, these service-connected disabilities were rated as 60 percent disabling combined with the disorders being of the same etiology and same body system. This makes him eligible for consideration under 38 C.F.R. § 4.16(a) since March 1, 2011, to April 29, 2012.
Since April 30, 2012, the Veteran has been service-connected for bilateral total knee replacement, lumbosacral strain, and an adjustment disorder with depressed mood. Since April 30, 2012, these service-connected disabilities have been rated 70 and 80 percent disabling combined with the orthopedic disabilities being 60 percent disabling and all disabilities being of a common etiology. This makes him eligible for consideration under 38 C.F.R. § 4.16(a) since April 30, 2012.
In his formal TDIU claim, the Veteran reported that he last worked full time in 2007, that he only had a high school education, and that he had no additional education or training.
There is conflicting evidence on the severity of his service-connected disabilities.
In December 2009, the Social Security Administration granted disability benefits effective December 8, 2007. That agency determined that the Veteran’s primary disability was the left knee replacement. In a physical residual functional capacity assessment, a doctor noted the impairments from the back and knee disabilities. That doctor stated that given the combination of impairments, activities of daily living, the Veteran’s age, and his body mass index, he would not be able to sustain a 40-hour work week.
In a February 2011 administrative note, a VA physician assistant stated that the Veteran was unable to work due to the right knee disability.
A May 2011 VA examiner noted that the right knee disability precluded the Veteran from performing any work other than sedentary work. The examiner added that left knee and low back disabilities precluded the Veteran from performing any work other than sedentary work and mild physical labor. 
An October 2012 VA examiner opined that the low back disability would seriously interfere with activities requiring lifting, carrying, bending, and stooping, but that sedentary activities would only be minimally affected. That examiner further stated that the bilateral knee disabilities limit the Veteran’s overall mobility, limit his maximal standing and walking times, limit his ability to climb up and down stairs, and basically preclude his participation in activities requiring running and jogging. The examiner added that sedentary activities are basically unaffected by the bilateral knee disabilities.
A private psychologist noted in August 2013 that the Veteran’s Global Assessment of Functioning (GAF) score is 50. The psychologist stated that the Veteran cannot sustain the stress from a competitive work environment and that he cannot be expected to engage in gainful activity secondary to his severe level of impairment connected to the back and knee injuries and subsequent mood disorder. The psychologist noted that the Veteran had difficulty adapting to stressful circumstances, including work or a work-like setting, and that he had suicidal ideation. The psychologist concluded that the Veteran had an occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and mood.
An April 2014 VA psychiatric examiner noted that the Veteran had suicidal ideation. The examiner opined that the Veteran has an occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily with normal routine behavior, self-care, and conversation.
An April 2014 VA orthopedic examiner noted that the lumber spine disability causes difficulty with prolonged standing, walking, and bending as well as lifting and carrying. The examiner stated that there was little to no sedentary restrictions.
Put simply, there is conflicting medical evidence on whether the bilateral knee disabilities and lumbar spine disability preclude sedentary employment. Given that the Veteran only has a high school education, the evidence is in equipoise as to whether the Veteran’s service-connected bilateral total knee replacement and lumbosacral strain rendered him unemployable from performing all forms of substantially gainful employment that are consistent with his education and occupational experience from March 1, 2011, to April 29, 2012. Moreover, the evidence is in equipoise as to whether the Veteran’s service-connected bilateral total knee replacement, lumbosacral strain, and adjustment disorder have rendered him unemployable from performing all forms of substantially gainful employment that are consistent with his education and occupational experience since April 30, 2012. Accordingly, entitlement to TDIU from March 1, 2010, is in order.
REASONS FOR REMAND
The Veteran was last examined for his knees in October 2012 at which time the examiner estimated that the Veteran lost an additional 80 percent of his knee function and motion during knee flare-ups. Given the passage of time and the significance of his estimated flare-ups, another VA examination is necessary.
The Veteran was last examined for his lumbar spine in April 2014 at which the examiner stated that he could not provide an opinion on the impact of a flare-up without resorting to mere speculation. Given the passage of time and the examiner’s statement, another VA examination is warranted. Sharp v. Shulkin, 29 Vet. App. 26 (2017).
Given that the orthopedic claims are being remanded for examinations, the RO should obtain any additional records from the Tampa VA Medical Center from May 2015 to the present.
In a May 2014 rating decision, the RO granted service connection for an adjustment disorder with depressed mood effective April 30, 2012. The Veteran’s former counsel filed a notice of disagreement with the effective date of the grant of service connection for that disorder. However, no statement of the case (SOC) has been issued addressing the earlier-effective-date claim. Manlincon v. West, 12 Vet. App. 238 (1999). 
As discussed above, the TDIU claim prior to March 1, 2011, is still pending. It is inextricably intertwined with the other issues and must be deferred. Harris v. Derwinski, 1 Vet. App. 180 (1991).

The matters are REMANDED for the following action:
1. Ask the Veteran to identify all treatment for his knee, lumbar spine, and psychiatric disorders, as well as any other disabilities pertaining to his TDIU claim, and obtain any identified records.
Obtain the Veteran’s VA treatment records from the Tampa VA Medical Center for the period from May 2015 to the present. 
2. Schedule the Veteran for an examination of the current severity of his bilateral knee and lumbar spine disabilities. The examiner must attempt to elicit information regarding the severity, frequency, and duration of any flare-ups, and the degree of functional loss during flare-ups. To the extent possible, the examiner should identify any symptoms and functional impairments due to the shoulders alone and discuss the effect of the Veteran’s shoulders on any occupational functioning and activities of daily living.
3. Send the Veteran and his representative a statement of the case that addresses the issue of entitlement to an effective date earlier than April 30, 2012, for an adjustment disorder with depressed mood. If the Veteran perfects an appeal by submitting a timely VA Form 9, the issue should be returned to the Board for further appellate consideration.

4. After completing the above action, the AOJ should readjudicate the Veteran’s claims. If any claim remains denied, the Veteran should be issued a supplemental statement of the case, with a copy to his representative, and afforded an opportunity to respond before the file is returned to the Board for further appellate consideration.

 
MICHAEL LANE
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD D. Cherry, Counsel